IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEPHEN B. PUCCETTI and RICHARD                 Civil No. 09-6172-AA
BOTTINI,                                             OPINION AND ORDER

        Plaintiffs,

    vs.

JEFF SPENCER, BRAD DUNCAN, and
CHRIS HAWKINS,

        Defendants.
_____

Michelle R. Burrows
Attorney at Law
618 NW Glisan Street, Suite 203
Portland, OR 97209
    Attorney for plaintiffs

John R. Kroger
Attorney General
Joseph G. Groshong
Assistant Attorney General
Leonard W. Williamson
Attorney-In-Charge
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
    Attorneys for defendants

1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiffs Stephen B. Puccetti ("Puccetti") and Richard Bottini ("Bottini") bring this action for violation of their federal constitutional rights under 28 U.S.C. §§ 1331 and 1343. Defendants Jeff Spencer ("Spencer"), Brad Duncan ("Duncan"), and Chris Hawkins ("Hawkins") bring this motion to dismiss plaintiffs' claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants' motion to dismiss is granted as to plaintiffs' claims based on unreasonable arrest and <u>Brady</u> violations, and denied as to plaintiffs' claims for malicious prosecution and fabrication of evidence. Additionally, plaintiffs' motion to recuse is denied, and defendants' motion for a stay of proceedings is moot.

## STATEMENT OF THE FACTS

On October 26, 2007, plaintiffs went elk hunting with a hunting party (the "Party") in Baker County, Oregon. On the morning of October 27, 2008, Francis DeRoest ("DeRoest") shot an elk ("DeRoest's Elk"). DeRoest radioed the Party, informing them he had an elk down and was out of bullets. Plaintiff Bottini went to find DeRoest.

On his way to DeRoest, Bottini approached defendant Spencer, an off-duty Oregon State Trooper also hunting in the area. Bottini and Spencer spoke for a few minutes until plaintiff Puccetti radioed that he had shot an elk tagged with tracking tag

2 - OPINION AND ORDER

number 89 ("Puccetti's Elk").  Bottini left Spencer to find
DeRoest.

    Bottini found DeRoest and then left DeRoest to find
Puccetti.  On his way to Puccetti, Bottini shot an elk
("Bottini's Elk") in the hindquarters.  (Pls.' Compl., 4.)
Bottini radioed Puccetti, informing Puccetti that the wounded elk
was heading towards him.  Puccetti saw the wounded elk limping
badly and shot Bottini's Elk "to put it out of its misery."  Id.
Bottini's Elk fell down, and Puccetti then shot it through the
neck "to terminate it."  Id. at 5.  Bottini arrived, saw it was
the elk he wounded, and tagged Bottini's Elk.  Id.

    The Party brought Puccetti's Elk to the trailer.  DeRoest's
Elk was so large it had to be cut in half.  As the Party hauled
the first half of DeRoest's Elk to the trailer, defendants
Hawkins and Duncan, both Oregon State Troopers, approached the
Party, demanding to know who shot the elk.  Hawkins told the
Party that defendant Spencer informed him that DeRoest had shot
Puccetti's Elk.  DeRoest informed the officers he had not shot
Puccetti's Elk.  The Party then retrieved the other half of
DeReoest's Elk as well as Bottini's Elk.  In a reversal of the
previous accusation, Hawkins and Duncan then accused Puccetti of
shooting both Puccetti's Elk and Bottini's Elk.

    Hawkins and Duncan ordered Bottini and Puccetti to provide
unexpended shells.  Puccetti provided three .7 mm cartridges and

Bottini provided one .300 Weatherby cartridge.  Plaintiffs then informed Hawkins and Duncan that Puccetti shot Puccetti's Elk and Bottini tagged Bottini's Elk after Puccetti killed Bottini's Elk (after Bottini wounded the elk).  Id. at 5-6.  Hawkins and Duncan took the bullets and spoke near their truck.

Shortly after plaintiffs told defendants who shot and tagged Puccetti's Elk and Bottini's Elk, plaintiffs allege that Hawkins and Duncan agreed to plant Puccetti's bullet on Bottini's Elk. Hawkins and Duncan then agreed to use the "planted" bullet as evidence to charge plaintiffs with crimes.  The officers seized Bottini's Elk and Puccetti's rifle.  Hawkins issued Puccetti a citation for Unlawful Taking of Wildlife.  Id. at 6.  Hawkins issued Bottini a citation for Lending a Big Game Tag.  Id. Although the Party requested Hawkins check the hindquarters of Bottini's Elk to see the right leg and hip damage (necessitating the "kill shots" by Puccetti), the officers refused to examine Bottini's Elk.

The officers then concluded DeRoest's Elk and Puccetti's Elk were legally taken.  Puccetti again requested Hawkins examine Bottini's Elk.  Hawkins responded that only two shots were fired and admonished Puccetti for refusing to allow a thorough and fair investigation.

In the following weeks, counsel for plaintiffs contacted the Baker County District Attorney (the "DA"), informing the DA that

plaintiffs wanted to examine the evidence relating to the charges. This evidence included Bottini's Elk, bullets, pictures, and notes from the investigation. Instead of preserving Bottini's Elk, plaintiffs allege that Hawkins delivered the elk to a butcher, requesting the elk be processed into steaks in order to destroy evidence as the case against plaintiffs "may be a lost case." The butcher later provided the DA with evidence supporting plaintiffs' version of events and proving defendants planted Puccetti's bullet on Bottini's Elk.

On November 15, 2007, plaintiffs' investigators interviewed the butcher. Later that evening, Hawkins demanded the butcher answer questions about the investigators. Hawkins also forbade the butcher from speaking about the investigation.

On November 16, 2007, Hawkins took Bottini's Elk from the butcher's shop. Hawkins also filed an official report which contained numerous false and contrived items in support of his illegal actions. Hawkins destroyed the elk and destroyed photographs which would have supported plaintiffs' version of events. Plaintiffs allege that defendants' actions resulted in plaintiffs' prosecution by the DA. Plaintiffs' prosecutions were ultimately dismissed by order of the court due to defendants' failure to comply with the constitutional requirements to preserve and protect exculpatory evidence.

## STANDARD OF REVIEW

For the purpose of a motion to dismiss, the complaint is liberally construed in favor of the plaintiffs, and its allegations are taken as true.  <u>Rosen v. Walters</u>, 719 F.2d 1422, 1424 (9th Cir. 1983).  Dismissal under rule 12(b)(6) is appropriate when the pleaded facts fail to state a claim for relief that is plausible on its face.  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007).  In other words, the reasonable inferences drawn from the "factual content" of the pleadings "must be plausibly suggestive of a claim entitling the plaintiff to relief."  <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009).

## DISCUSSION

Defendants' original argument was based on one point only: because plaintiffs' complaint demonstrates probable cause existed to arrest and prosecute plaintiffs, defendants' motion to dismiss must be granted because the existence of probable cause is fatal to claims of malicious prosecution and false arrest.  In their response, plaintiffs stated that in addition to claims of unreasonable arrest and malicious prosecution, they also brought claims based on <u>Brady</u> and <u>Devereaux</u>.  Finally, although subsequent briefings offer arguments surrounding the issue of qualified immunity, qualified immunity is irrelevant to defendants' motion to dismiss.

A.  Unreasonable Arrest

    Plaintiffs' fourth amendment claim(s) are predicated on the
argument that plaintiffs' arrests were not supported by probable
cause.  (Pls.' Comp., 11.)  To determine if officers had probable
cause to arrest, the court asks whether, "at the moment of arrest
the facts and circumstances within the knowledge of the arresting
officers and of which they had reasonably trustworthy information
were sufficient to warrant a prudent person in believing that the
petitioner had committed or was committing an offense."
Blankenhorn v. City of Orange, 485 F.3d 463, 471 (9th Cir.
2007)(internal citations omitted).

    As stated above, Hawkins issued Puccetti a citation for
Unlawful Taking of Wildlife, and Bottini a citation for Lending a
Big Game Tag.  The Oregon Big Game Regulations (the
"Regulations") require that hunters obtain a valid "tag" prior to
hunting.  O.R.S. § 497.075(1); Oregon Big Game Regulations, 64
(2007).  A "'tag' is a document authorizing the taking of a
designated kind of mammal at a specified time and place."  O.A.R.
635-045-002(75) (2007).  Each elk "tag" issued allows the
recipient to "take" one elk for the hunt specified.  Id. at 64-
70.  To "take" an animal is to "kill or obtain possession or
control" of the animal.  Id. at (76).  It is unlawful "[t]o sell,
lend, or borrow any big game tag."  O.A.R. 635-065-0760(8)
(2007).

There is no dispute that plaintiffs confessed to committing the very violations they were cited for.  As stated above, plaintiffs' complaint states Puccetti and Bottini informed Duncan and Hawkins that Puccetti killed two elk and that Bottini tagged an elk he did not kill.  Thus, defendants had a subjective and objectively reasonable belief that plaintiffs had indeed committed the violations they were cited for.  Regardless of any subsequent fabrication or destruction of evidence, there is no doubt that based solely on the information admitted to by plaintiffs, defendants had probable cause to arrest plaintiffs. See McSherry v. City of Long Beach, 560 F.3d 1125, 1132 (9th Cir. 2009)(officers had probable cause to arrest plaintiffs even though officers may have fabricated evidence).  Therefore, plaintiffs' claim of unreasonable arrest fails to state a claim, and is dismissed.

B.  Malicious Prosecution

Courts look to state law when analyzing claims of malicious prosecution under 42 U.S.C. § 1983.  See Usher v. City of Los Angeles, 828 F.2d 556, 562 (9th Cir. 1987)(using California's elements of malicious prosecution); see also Awabdy v. City of Adelanto, 368 F.3d 1062, 1067 (9th Cir. 2004).  Under Oregon law, malicious prosecution requires: 1) the initiation or continuation of criminal proceedings; 2) by or at the insistence of the defendant; 3) terminating in plaintiff's favor; 4) instituted

8 - OPINION AND ORDER

with malice; 5) a lack of probable cause for the proceedings; and 6) damages. <u>Blandino v. Fischel</u>, 179 Or. App. 185, 190-91, 39 P.3d 258, 261 (2002). The existence of probable cause is a complete defense to malicious prosecution. <u>Gustafson v. Payless Drug Stores Northwest, Inc.</u>, 269 Or. 354, 356, 525 P.2d 118, 119-20 (1974).

A defendant has probable cause to initiate criminal proceedings if he reasonably believes plaintiff acted in a particular manner and such action indeed constitutes the offense charged. <u>Id.</u> at 356-57. However, a plaintiff may rebut a prima facie presumption of probable cause to initiate criminal proceedings "by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." <u>Awabdy</u>, 368 F.3d at 1067; <u>Hryciuk v. Robinson</u>, 213 Or. 542, 558-59, 326 P.2d 424, 431-32 (1958).

Viewed in the light most favorable to plaintiffs, the allegations could show that had the DA received a truthful report from defendants, the DA would have decided not to prosecute plaintiffs for this mercy killing of a mortally wounded animal. Thus, for the purpose of this motion, plaintiffs' allegations could show that defendants' conduct after the arrest was "instrumental in causing the filing and prosecution of the criminal proceedings." <u>Awabdy</u>, 368 F.3d at 1068; <u>see also</u>

Blankenhorn, 485 F.3d at 482-83 (discussing how to determine if information is "legally relevant" information relied on by the prosecutor in making the decision to charge). Additionally, plaintiffs have successfully rebutted the prima facie showing of probable cause by alleging "wrongful conduct undertaken in bad faith." See Awabdy, 368 F.3d at 1067. Thus, plaintiffs' complaint alleges sufficient facts rebutting the probable cause determination for purposes of a malicious prosecution claim. Therefore, defendants' motion to dismiss plaintiffs' claims of malicious prosecution is denied.

C.   Brady Violations

       Plaintiffs also argue the claims should not be dismissed because the complaint presents due process violations as a result of withheld and/or destroyed evidence material to plaintiffs' innocence. Plaintiff states these claims are based on the due process protections outlined in Brady v. Maryland, 373 U.S. 83 (1963). (Pls.' Resp. to Mot. to Dismiss, 6.) Brady violations require three elements: 1) the suppressed evidence must be favorable to the accused; 2) the state must have suppressed the evidence; and 3) the suppressed evidence must be material to the guilt or innocence of the accused. U.S. v. Jernigan, 492 F.3d 1050, 1053 (9th Cir. 2007)(en banc). To be "material," the suppressed evidence must have had a "reasonable probability" of producing a different result had the evidence been admitted at

trial.  Id. at 1053-54.  As noted by defendants, plaintiffs here were never convicted at trial as the charges were ultimately dismissed.  (Pls.' Comp. 13.)  Therefore, plaintiffs may not now bring claims based on Brady violations as plaintiffs cannot show that any suppressed evidence could have produced a different result at trial.  Defendants' motion to dismiss plaintiffs' claims based on Brady violations is granted.

D.  Fabrication of Evidence

    Plaintiffs allege that defendants deliberately fabricated evidence.  As stated by the Ninth Circuit, "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."  Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001)(en banc).  To state a claim for fabrication of evidence, plaintiffs must show that defendants: 1) continued the investigation despite the fact they knew, or should have known, plaintiffs were innocent; or 2) used investigative techniques so coercive or abusive that they knew, or should have known, such techniques would yield false information.  Id. at 1076.

    Even though plaintiffs essentially confessed to violating the wildlife regulations, plaintiffs could meet the first prong under Devereaux by showing defendants knew of an exception in the regulations for "mercy killings" of mortally wounded animals.  In

11 - OPINION AND ORDER

addition, plaintiffs meet the second prong by alleging defendants deliberately fabricated and destroyed evidence.  Therefore, defendants' motion to dismiss plaintiffs' claims for fabrication of evidence is denied.

### CONCLUSION

Defendants' motion to dismiss (doc. 3) plaintiffs' claims for unreasonable arrest and <u>Brady</u> violations is granted. Defendants' motion to dismiss (doc. 3) plaintiffs' claims for malicious prosecution and fabrication of evidence is denied.

Additionally, I note that plaintiffs' claims are unclear. Plaintiffs allege only one state law claim in the complaint yet later assert they are bringing two state law claims.  (Compare Pls.' Compl., 13 with Pls.' Am. Resp. to Stay of Proceedings and Mot. on Qualified Immunity, 15-16.)  Plaintiffs also argue they are bringing claims based on <u>Brady</u> violations and <u>Devereaux</u> while the complaint appears to state only a malicious prosecution claim.  Plaintiffs are therefore granted leave to amend the complaint, to "state separately the state and federal claims as well as the various federal claims under § 1983." <u>See</u> <u>Awabdy</u>, 368 F.3d at 1072.  Any amended complaint should be filed by December 14, 2009.  Moreover, defendants' motion for stay of proceedings (doc. 16) is moot, and plaintiffs' motion to recuse (doc. 14) is denied.  Finally, the parties are directed to contact the court if they are interested in pursuing a judicial

settlement conference.

IT IS SO ORDERED.

Dated this  28   day of October 2009.



                              /s/ Ann Aiken
                              Ann Aiken
                     United States District Judge

13 - OPINION AND ORDER