FILED'10 SEP 14 15:19 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEPHEN B. PUCCETTI and RICHARD
BOTTINI,

Civil No. 09-6172-AA
OPINION AND ORDER

     Plaintiffs,

vs.

JEFF SPENCER, BRAD DUNCAN, and
CHRIS HAWKINS,

     Defendants.

Michelle R. Burrows
Attorney at Law
618 NW Glisan Street, Suite 203
Portland, OR 97209
    Attorney for plaintiffs

John R. Kroger
Attorney General
Joseph G. Groshong
Assistant Attorney General
Leonard W. Williamson
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
    Attorneys for defendants

1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiffs Stephen B. Puccetti ("Puccetti") and Richard Bottini ("Bottini") bring this action for violation of their federal constitutional rights under 28 U.S.C. §§ 1331 and 1343. Defendants Jeff Spencer ("Spencer"), Brad Duncan ("Duncan"), and Chris Hawkins ("Hawkins") bring this motion for summary judgment. For the reasons explained below, defendants' motion is granted and this case is dismissed.

## STATEMENT OF THE FACTS

On October 26, 2007, plaintiffs went elk hunting with a hunting party (the "Party") in Baker County, Oregon. On the morning of October 27, 2008, Francis DeRoest ("DeRoest") shot an elk ("DeRoest's Elk"). DeRoest radioed the Party, informing them he had an elk down and was out of bullets. Plaintiff Bottini went to find DeRoest.

On his way to DeRoest, Bottini approached defendant Spencer, an off-duty Oregon State Trooper also hunting in the area. Bottini and Spencer spoke for a few minutes until plaintiff Puccetti radioed that he had shot an elk tagged with tracking tag number 89 ("Puccetti's Elk"). Bottini left Spencer to find DeRoest.

Bottini found DeRoest and then left DeRoest to find Puccetti. On his way to Puccetti, Bottini shot an elk ("Bottini's Elk") in the hindquarters. (Pls.' Compl., p. 4).

2 - OPINION AND ORDER

Bottini radioed Puccetti, informing Puccetti that the wounded elk
was heading towards him.  Puccetti saw the wounded elk limping
badly and shot Bottini's Elk "to put it out of its misery."  Id.
Bottini's Elk fell down, and Puccetti then shot it through the
neck "to terminate it."  Id. at 5.  Bottini arrived, saw it was
the elk he wounded, and tagged Bottini's Elk.  Id.

        The Party brought Puccetti's Elk to the trailer.
DeRoest's Elk was so large it had to be cut in half.  As the
Party hauled the first half of DeRoest's Elk to the trailer,
defendants Hawkins and Duncan, both Oregon State Troopers,
approached the Party, demanding to know who shot the elk.
Hawkins told the Party that defendant Spencer informed him that
DeRoest had shot Puccetti's Elk.  DeRoest informed the officers
he had not shot Puccetti's Elk.  The Party then retrieved the
other half of DeReoest's Elk as well as Bottini's Elk.  In a
reversal of the previous accusation, Hawkins and Duncan then
accused Puccetti of shooting both Puccetti's Elk and Bottini's
Elk. (Pls.' Am. Compl., p, 5).

        Hawkins and Duncan ordered Bottini and Puccetti to
provide unexpended shells.  Puccetti provided three .7 mm
cartridges and Bottini provided one .300 Weatherby cartridge.
Plaintiffs then informed Hawkins and Duncan that Puccetti shot
Puccetti's Elk and Bottini tagged Bottini's Elk after Puccetti
killed Bottini's Elk (after Bottini wounded the elk).  Hawkins

3 - OPINION AND ORDER

and Duncan took the bullets and spoke near their truck. Id. at
5-6.

Shortly after plaintiffs told defendants who shot and
tagged Puccetti's Elk and Bottini's Elk, plaintiffs allege that
Hawkins and Duncan agreed to plant Puccetti's bullet on Bottini's
Elk. Hawkins and Duncan then agreed to use the "planted" bullet
as evidence to charge plaintiffs with crimes. The officers
seized Bottini's Elk and Puccetti's rifle. Hawkins issued
Puccetti a citation for Unlawful Taking of Wildlife. (Pls.'
Compl., p. 6). Hawkins issued Bottini a citation for Lending a
Big Game Tag. Id. Although the Party requested Hawkins check
the hindquarters of Bottini's Elk to see the right leg and hip
damage (necessitating the "kill shots" by Puccetti), the officers
refused to examine Bottini's Elk.

The officers then concluded DeRoest's Elk and
Puccetti's Elk were legally taken. Puccetti again requested
Hawkins examine Bottini's Elk. Hawkins responded that only two
shots were fired and admonished Puccetti for refusing to allow a
thorough and fair investigation.

In the following weeks, counsel for plaintiffs
contacted the Baker County District Attorney (the "DA"),
informing the DA that plaintiffs wanted to examine the evidence
relating to the charges. This evidence included Bottini's Elk,
bullets, pictures, and notes from the investigation. Instead of

4 - OPINION AND ORDER

preserving Bottini's Elk, plaintiffs allege that Hawkins
delivered the elk to a butcher, and requested the elk be
processed into steaks in order to destroy evidence as the case
against plaintiffs "may be a lost case." (Pls.' Am. Compl., p.
8). The butcher later provided the DA with evidence supporting
plaintiffs' version of events and proving defendants planted
Puccetti's bullet on Bottini's Elk. Id.

        On November 16, 2007, Hawkins took Bottini's Elk from
the butcher's shop. Id. at 9. Hawkins also filed an official
report which contained numerous false and contrived items in
support of his illegal actions. Id. Hawkins destroyed the elk
and destroyed photographs which would have supported plaintiffs'
version of events. Plaintiffs allege that defendants' actions
resulted in plaintiffs' prosecution by the DA. The DA asserts
that regardless of his belief of defendants' version of the
facts, plaintiffs' admissions alone formed a basis for their
prosecution for violations of Oregon law. (Fisher's Aff., 2).
Plaintiffs' prosecutions were ultimately dismissed by the court
due to defendants' failure to comply with the constitutional
requirements to preserve and protect exculpatory evidence.

## STANDARD OF REVIEW

        Summary Judgment is appropriate "if the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and

5 - OPINION AND ORDER

that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56. Substantive law on an issue determines the
materiality of a fact. T.W. Elec. Serv., Inc. v. Pac. Elec.
Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Whether
the evidence is such that a reasonable jury could return a
verdict for the nonmoving party determines the authenticity of a
dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986). The moving party has the burden of establishing the
absence of a genuine issue of material fact. Celotex Corp. v.
Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the
absence of a genuine issue of material fact, the nonmoving party
must go beyond the pleadings and identify facts which show a
genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating
summary judgment motions: (1) all reasonable doubts as to the
existence of genuine issues of material fact should be resolved
against the moving party; and (2) all inferences to be drawn from
the underlying facts must be viewed in the light most favorable
to the nonmoving party. T.W. Elec., 809 F.2d at 630.

## DISCUSSION

The court previously granted defedants' motion to
dismiss plaintiffs' claims of unreasonable arrest and Brady
violations. Because plaintiffs' claims were unclear, plaintiffs
were granted leave to amend the compliant to "state separately

the state and federal claims as well as the various federal claims under § 1983." (Op. and Order for Defs.' Mot. to Dismiss, p. 12). See Awabdy v. City of Adelanto, 368 F.3d 1062, 1072 (9th Cir. 2004). Plaintiffs' amended complaint, however, realleged Brady violations, in addition to articulating § 1983 claims of malicious prosecution and due process violations under Devereaux, and a state law tort of malicious prosecution. (Pls.' Am. Compl. p. 11-14).

A.   Brady Violations

          Plaintiffs, again, argue due process violations as a result of withheld and/or destroyed evidence material to plaintiffs' innocence. Plaintiff states these claims are based on the due process protections outlined in Brady v. Maryland, 373 U.S. 83 (1963). (Pls.' Resp. to Mot. to Dismiss, p. 6). As noted in the prior opinion, Brady violations require three elements: 1) the suppressed evidence must be favorable to the accused; 2) the state must have suppressed the evidence; and 3) the suppressed evidence must be material to the guilt or innocence of the accused. United States v. Jernigan, 492 F.3d 1050, 1053 (9th Cir. 2007)(en banc). To be "material," the suppressed evidence must have had a "reasonable probability" of producing a different result had the evidence been admitted at trial. Id. at 1053-54. As stated in the Order for Motion to Dismiss, plaintiffs were never convicted at trial as the charges

were ultimately dismissed.  (Pls.' Compl., p. 13).

As a result, this court previously held that plaintiffs "may not now bring claims based on Brady violations as plaintiffs cannot show that any suppressed evidence could have produced a different result at trial."  (Order and Op. for Defs.' Mot. to Dismiss, p. 13).

It appears that plaintiffs further allege that defendants' order to destroy the elk carcass also supports their due process violation under Devereaux (discussed below).  This, however, is improper.  Due process violations as a result of failure to preserve potentially exculpatory evidence are analyzed under Arizona v. Youngblood, 488 U.S. 51 (1998).  "A due process violation based on the failure to preserve *potentially* exculpatory evidence requires a showing of bad faith on the part of the official.  Atkins v. County of Riverside, 151 Fed.Appx. 501, 507 (9th Cir. 2005) (citing Youngblood, 488 U.S. at 57).  Youngblood distinguished *potentially* exculpatory evidence, from that which *is known* to be exculpatory, as in Brady.  Id.  See also California v. Trombetta, 467 U.S. 479 (1984) (discussing potentially exculpatory evidence and holding the exculpatory value of the evidence must be apparent "before the evidence was destroyed.").

Here, despite the fact that the carcass of Bottini's Elk may have been destroyed in bad faith, there was no

8 - OPINION AND ORDER

exculpatory value to the carcass. As discussed below, although the carcass *may* have provided evidence which supported plaintiffs' claims of a crippling shot to the hindquarters, such evidence would not exculpate plaintiffs from the claims with which they were charged.

Therefore, no genuine issue of material fact remains to this claim. Because this court already dismissed all claims based on Brady violations, and because the elk carcass could not have potentially provided any exculpatory value, defendants' motion for summary judgment on plaintiffs' claims of due process violations under Brady or Youngblood is granted.

B. Malicious Prosecution

Courts look to state law when analyzing claims of malicious prosecution under 42 U.S.C. § 1983. See Usher v. City of Los Angeles, 828 F.2d 556, 562 (9th Cir. 1987)(relying on California's elements of malicious prosecution); see also Awabdy, 368 F.3d at 1067. Under Oregon law, malicious prosecution requires: 1) the initiation or continuation of criminal proceedings; 2) by or at the insistence of the defendant; 3) terminating in plaintiff's favor; 4) instituted with malice; 5) a lack of probable cause for the proceedings; and 6) damages. Blandino v. Fischel, 179 Or. App. 185, 190-91, 39 P.3d 258, 261 (2002). The existence of probable cause is a complete defense to malicious prosecution. Gustafson v. Payless Drug Stores

9 - OPINION AND ORDER

Northwest, Inc., 269 Or. 354, 356, 525 P.2d 118, 119-20 (1974).

A defendant has probable cause to initiate criminal proceedings if he reasonably believes plaintiff acted in a particular manner and such action indeed constitutes the offense charged. Id. at 356-57. However, a plaintiff may rebut a prima facie presumption of probable cause to initiate criminal proceedings "by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." Awabdy, 368 F.3d at 1067; Hryciuk v. Robinson, 213 Or. 542, 558-59, 326 P.2d 424, 431-32 (1958).

It is undisputed that plaintiffs Bottini and Puccetti admitted to defendants that they had wounded and "terminated" Bottini's Elk, respectively. Therefore, defendants had probable cause to issue citations to both plaintiffs. (Order and Op. for Defs.' Mot. to Dismiss, p. 8). The question for this court is whether a genuine issue of material fact exists regarding defendants' conduct after the arrest, that is, did defendants "induc[e] [the initiation of criminal proceedings] by . . . fabricat[ing] evidence, or other wrongful conduct undertaken in bad faith." Awabdy, 368 F.3d 1067; see also Blankenhorn v. City of Orange, 485 F.3d 463, 482-83 (9th Cir. 2007) (discussing how information is "legally relevant" to such determination if it is required to form a basis for a claim, or is the sole information

10 - OPINION AND ORDER

relied on by the prosecutor in making the decision to charge).

> (I) <u>Plaintiff Bottini's citation for Lending a Big Game</u>
>     <u>Tag</u>

Defendants cited Bottini under O.R.S. § 498.002 for assisting Puccetti with the "Unlawful Taking of Wildlife" by "Lending a Big Game Tag" based on Bottini and Puccetti's admissions that Bottini put his "tag" on the "Bottini elk," which Puccetti killed. (Pls.' Am. Compl., p. 6). The Oregon Big Game Regulations (the "Regulations") require that hunters obtain a valid "tag" prior to hunting. O.R.S. § 497.075(1); <u>Oregon Big Game Regulations</u>, 64 (2007). A "'tag' is a document authorizing the taking of a designated kind of mammal at a specified time and place." O.A.R. 635-045-002(75) (2007). Each elk "tag" allows the recipient to "take" one elk for the hunt specified. <u>Id.</u> at 64-70. To "take" an animal is to "kill or obtain possession or control" of the animal. <u>Id.</u> at (76). It is unlawful "[t]o sell, lend, or borrow any big game tag." O.A.R. 635-065-0760(8) (2007). O.R.S. § 498.002 prohibits any person from taking or possessing, or assisting another to take or possess "any wildlife in violation of the wildlife laws or of any rule promulgated pursuant thereto." O.R.S. § 498.002. There is a "mercy killing" statute that provides an exception to the Regulations. O.R.S. § 498.016. This statute provides:

> [n]othing in the wildlife laws is intended to
> prohibit any person from killing any crippled

11 - OPINION AND ORDER

> or helpless wildlife when the killing is done
> for a humane purpose. *Any person so killing
> any wildlife shall immediately report such
> killing to a person authorized to enforce the
> wildlife laws, and shall dispose of the
> wildlife in such manner as the State Fish and
> Wildlife Commission directs.*

ORS 498.0016 (emphasis added).

Plaintiffs allege defendants provided the DA with
falsified evidence, and that the false evidence "induced" the
decision to prosecute because had the DA received a truthful
report, he would have applied the "mercy killing" law and not
filed charges. See Awabdy, 368 F.3d at 1067 (citing Galbraith v.
County of Santa Clara, 307 F.3d 1119, 1126-27 (9th Cir. 2002)
(plaintiff's allegations that coroner's knowingly or recklessly
false statements led to his arrest and prosecution were
sufficient to state a § 1983 claim)).

The facts as to Bottini are undisputed.  Bottini tagged
an elk he did not kill, which violates Oregon law. Because he
did not kill the elk, O.R.S. § 498.016 does not apply.  Thus, any
alleged falsified evidence provided by the defendants would have
been irrelevant to the DA's determination to initiate proceedings
against Bottini. Further, unlike the prosecutor in Blankenhorn,
the DA here based his decision to prosecute Bottini on more than
defendants' reports.  He also relied on Bottini's own admissions
and on witness interviews.  (Fisher Aff., p. 2).  It is
significant that plaintiffs' admissions themselves establish the

12 - OPINION AND ORDER

violation of O.R.S. § 498.002.  Id.  Therefore, no reasonable juror could conclude that defendants' alleged actions or falsified evidence induced Bottini's prosecution under O.R.S. § 498.002.  Thus, defendants' motion for summary judgment as to the malicious prosecution of plaintiff Bottini is granted.

>           (ii)   Plaintiff Puccetti's citation for Unlawful Taking
>                  of Wildlife

Defendants cited Puccetti under O.R.S. § 498.002 for the Unlawful Taking of Wildlife for killing an elk for which he did not have a tag.  (Pls.' Am. Compl., p. 6).  It is undisputed Puccetti admitted he killed Bottini's Elk to "put it out of its misery," and Bottini tagged it.  (Pls.' Am. Compl., p. 4-5).  It was Puccetti's second kill.  Id.  The Regulations permit only one elk tag per person.  O.A.R. 635-045-002 (64-70) (2007).  Because Puccetti was the hunter who actually killed Bottini's elk, O.R.S. § 498.016 may be applicable if the kill was for humane purposes and it was properly reported.

Plaintiffs' allege that defendants planted bullets on the elk, negating the claim that Puccetti was the mercy kill shot, subsequent to Bottini's wounding/crippling shot. Plaintiffs further allege defendants provided the DA with this falsified evidence, and that false evidence "induced" the DA to file criminal charges.  Plaintiffs assert that had the DA received a truthful report, he would have applied the "mercy

13 - OPINION AND ORDER

killing" statute and not filed charges. See Blankenhorn, 485
F.3d at 482-83 (discussing prosecutor reliance on legally
relevant information to make charging determinations).

Again, unlike the prosecutor in Blankenhorn, the DA
here relied on more that just defendants' reports, and testifies
that regardless of whether he believed defendants' version of the
events after conducting his own investigation, he still would
have prosecuted plaintiffs based on their own admissions.
(Fisher Aff., p. 2).

Therefore, a reasonable juror could conclude Bottini's
Elk was terminated by Puccetti for humane purposes, and that a
truthful report from defendants would have caused the DA to
consider this a mercy kill under O.R.S. § 498.016. However, the
second prong of ORS 498.016 is fatal to plaintiffs' claims.

That prong provides "[a]ny person [killing wildlife for
humane purposes] *shall immediately report such killing to a
person authorized to enforce the wildlife laws, and shall dispose
of the wildlife in such manner as the [authorities] directs.* ORS
498.016 (emphasis added). There is no evidence in the record
which could cause a reasonable juror to conclude plaintiffs had
any intention, or undertook any action, to immediately report the
"mercy" killing of Bottini's elk. Nor is there evidence
plaintiffs had any intention of disposing the animal according to
the direction of the Fish and Wildlife services. After Bottini

14 - OPINION AND ORDER

*tagged* the elk plaintiffs began carrying their kills back to the
truck.  (Pls.' Am. Compl., p. 5).  The "report" by plaintiffs was
undertaken only <u>after</u> defendants approached plaintiffs and
accused them of violating the law.  <u>Id.</u>  Had the plaintiffs
intended to execute a "mercy kill" as allowed by Oregon law,
there would have been no reason to tag the animal.  Further, a
reasonable juror would conclude that when recounting the events
to defendants, plaintiffs would have been as vigilant about
asserting their intention to report the "mercy kill" as they were
about the fact the animal was first wounded and the kill was done
out of mercy.

A reasonable juror could not conclude that Puccetti was
in compliance with the second portion of ORS 498.016.  Therefore,
none of defendants' actions subsequent to plaintiffs' admissions
could reasonably be considered relevant to the DA in his
determination to initiate legal proceedings.  Defendants' motion
for summary judgment for malicious prosecution of plaintiff
Puccetti is granted.

(iii)   <u>State tort law Malicious Prosecution claim</u>

Courts look to state law when analyzing claims of
malicious prosecution under 42 U.S.C. § 1983.  <u>See</u> <u>Usher</u>, 828
F.2d at 562 (using California's elements of malicious
prosecution); <u>see</u> <u>also</u> <u>Awabdy</u>, 368 F.3d at 1067.  Therefore,
because Oregon law was applied to the above determinations on

plaintiff's § 1983 malicious prosecution claim, the same holding
will apply to the claim arising under state law.  As such,
defendants' motion for summary judgment on plaintiffs' state law
claim for malicious prosecution is granted.

C.  Fabrication of Evidence

        Plaintiffs' claim that defendants deliberately
fabricated evidence is dismissed as moot.  Therefore, it is
irrelevant whether a material issue of fact exists.  As stated
by the Ninth Circuit, "there is a clearly established
constitutional due process right not to be subjected to criminal
charges on the basis of false evidence that was deliberately
fabricated by the government."  Devereaux v. Abbey, 263 F.3d
1070, 1074-75 (9th Cir. 2001)(en banc). However, for
jurisdictional purposes, plaintiffs must "satisfy the requirement
imposed by Article III of the Constitution by alleging an actual
case or controversy."  City of Los Angeles v. Lyons, 461 U.S. 95,
101 (1982) (citing Flast v. Cohen, 392 U.S. 83, 94-101 (1968)).
Plaintiffs must also demonstrate a "personal stake in the
outcome" in order to "assure that concrete adverseness which
sharpens the presentation of issues" necessary for the proper
resolution of constitutional questions."  Lyons, 461 U.S. at 101
(citing Baker v. Carr, 369 U.S. 186, 204 (1962)).  "Abstract
injury is not enough."  Id.  The plaintiff must show that he "has
sustained or is immediately in danger of sustaining some direct

injury" as a result of the challenged conduct and the injury [or
threat thereof] must be both "real and immediate," not
"conjectural" or "hypothetical." Lyons, 461 U.S. at 101 (citing
Golden v. Zwickler, 394 U.S. 103, 109-110 (1969), United Public
Workers v. Mitchell, 330 U.S. 75, 89-91 (1947), Maryland Casualty
Co. v. Pacific Coal & Oil CO., 312 U.S. 270, 273 (1941)).

In O'Shea v. Littleton, 414 U.S. 488 (1974), the Court
held that "[p]ast exposure to illegal conduct does not in itself
show a present case or controversy . . . if unaccompanied by any
continuing, present adverse effects." Id., at 495-96.   In
O'Shea, the Court found that the mere possibility of a threat
that plaintiffs could again be subjected to discriminatory bond
hearings was not "sufficiently real and immediate to show an
existing controversy." Id. at 496.   The Court stated it assumed
plaintiffs will "conduct their activities within the law and so
avoid prosecution and conviction as well as exposure to the
challenged course of conduct said to be followed by petitioners."
Id. at 497.   See also Rizzo v. Goode, 423 U.S. 362 (1976)
(reiterating its holding from O'Shea providing that "past wrongs
do not in themselves amount to that real and immediate threat"
required for a controversy)).

In Lyons, the plaintiff alleged he was illegally choked
by police subsequent to being stopped for a traffic violation by
police officers. Lyons, 461 U.S. at 95.   The Court held that

17 - OPINION AND ORDER

>               to establish an actual controversy in this
>               case, [plaintiff] would have had not only to
>               allege that he would have another encounter
>               with the police but also to make the
>               incredible assertion either, (1) that *all*
>               police officers in [the city] *always* choke
>               any citizen with whom they happen to have an
>               encounter, whether for the purpose of arrest,
>               issuing a citation or for questioning or, (2)
>               that the City ordered or authorized police
>               officers to act in such manner.

Id. at 105-06.

          Similar to O'Shea and Lyons plaintiffs here allege
constitutional violations based on one alleged isolated incident
with defendants.  The alleged conduct is not ongoing, nor is
there a threat of it continuing or repeating.   Further, even
assuming plaintiffs' allegations were true, the fabricated
evidence played no role in proving, or mitigating plaintiffs'
actions in violation of O.R.S. § 498.002; thus there was never an
injury as a result of defendants' alleged conduct.

          Here, like Lyons, to establish an actual controversy
plaintiffs would have to allege they would have another similar
encounter with police as a result of their hunting conduct, and
"make the incredible assertion either, (1) that *all* [Oregon
State] police officers *always* [fabricate evidence] or, (2) that
the [State] ordered or authorized [defendants' conduct.]"   Lyons,
461 U.S. at 105-06.   Plaintiffs have not made such an assertion,
nor would such assertion be plausible or realistic.

          Assuming *arguendo*, plaintiffs' allegations are true,

18 - OPINION AND ORDER

defendants' conduct is not only unethical, but also a clear violation of due process. Due process violations aside, defendants' alleged conduct is unacceptable, and certainly not condoned by this court. Police officers have a duty to maintain evidence and the integrity of an investigation, regardless of their personal beliefs. Moreover, it goes without saying that police officers should not compromise an investigation by "planting" or destroying evidence. Such behavior is contrary to the very foundation of their duty as sworn officers of the justice system. As such, defendants' alleged conduct, although irrelevant in determining the pending motion, is deplorable. However, because plaintiffs have not sustained, nor are they in immediate danger of sustaining, an injury that is more than abstract and hypothetical, an actual case or controversy does not exist. Therefore, plaintiffs fail to satisfy "the threshold requirements imposed by Article III of the Constitution" to invoke federal court jurisdiction. Id. at 102. As such, despite the disappointing conduct of defendants, this issue is dismissed as moot, and defendants' motion for summary judgment is granted.

## CONCLUSION

Defendants' motion for summary judgment (doc. 33) is granted and this case is dismissed. All pending motions are denied as moot.

19 - OPINION AND ORDER

IT IS SO ORDERED.

Dated this _10_ day of September 2010.


                              _Ann Aiken_
                              Ann Aiken
                    United States District Judge